UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOSE FRANCISCO ORELLANA-RIVERA,

Petitioner,

v.

J. JOHNSON et al.,

Respondents.

Case No. 5:26-cv-02116-HDV-AJR

**ORDER GRANTING PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION**

## I.    INTRODUCTION

Petitioner Jose Francisco Orellana-Rivera arrived with his family to the United States from Honduras at age four.  After being paroled into the community in 2001 when he arrived, he was abruptly re-detained twenty-four years later in June 2025.

On April 24, 2026, Petitioner filed a Petition for Writ of Habeas Corpus ("Petition") and accompanying Ex Parte Application for Temporary Restraining Order ("Application") requesting his immediate release from detention.  [Dkts. 2–4].  The Court granted the Application in part, enjoining Respondents from transferring, relocating, or removing Petitioner outside of the Central District of California, and set a briefing schedule and hearing on whether a preliminary injunction should issue with the Application serving at the opening brief.  [Dkt. 1].  Respondents filed an Opposition on April 29, 2026 opposing Petitioner's immediate release on the grounds that Petitioner was given a bond hearing in February 2026, and pointing out that an Immigration Judge denied bond. Opposition at 1 [Dkt. 10].  Following the hearing on May 5, 2026, the Court ordered additional briefing and supplementation of the record.  [Dkts. 13, 15, 16].[1]

As an increasing wave of district courts have concluded, a post-hoc bond hearing "cannot support Petitioner's continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of Petitioner's due process rights and, thus, invalid." *Mumaev v. Semaia*, No. 5:25-cv-03409-FLA-MAR, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026).[2]  That analysis applies here.  Respondents violated the law by detaining Petitioner without a pre-detention hearing,

---

[1] The Court ordered Respondents to provide Petitioner's complete rap sheet and a transcript or audio recording of his bond hearing by May 11, 2026.  [Dkt. 13].  While Respondents provided the rap sheet, they have not been able to comply with the Court's order to provide the requested information regarding the bond hearing.  *See* [Dkt. 15], Ex. B.  Although the Court grants the preliminary injunction herein, Respondents are nonetheless still ordered to provide a transcript or audio recording of Petitioner's bond hearing as soon as possible.

[2] *See also Charaf v. Rios*, No. 5:26-cv-01971-MAR, 2026 WL 1270754, at *1 (C.D. Cal. May 5, 2026); *Morales v. U.S. Immigr. and Customs Enf't*, No. 5:26-cv-01404-DOC-MAR, 2026 WL 1026234 (C.D. Cal. Apr. 15, 2026); *Osmel v. D. Marin*, No. ED-cv-26-1548-E, 2026 WL 1209477, at *3 (C.D. Cal. Apr. 29, 2026); *Singh v. Janecka*, No. 5:26-cv-01414-ACCV, 2026 U.S. Dist. LEXIS 95798, at *16–17 (C.D. Cal. Apr. 29, 2026).

1

and violated his constitutional rights by waiting over eight months to finally provide him some small (and insufficient) modicum of due process.

The Court grants the preliminary injunction and orders Petitioner's immediate release.

## II.   BACKGROUND

Petitioner Jose Francisco Orellana-Rivera, born in Honduras in 1996, arrived in the U.S. in 2001 at the age of four.  Petition ¶ 55 & Ex. A.  He and his family were initially detained at the U.S./Mexico border in Laredo, Texas, but were released with parole conditions.  *Id*.

Petitioner is married to a U.S. citizen and has two citizen children, ages nine and one.  *Id*. ¶ 1.  He was a recipient of Deferred Action for Childhood Arrivals ("DACA")[3] and graduated from high school in Texas.  *Id*. & Ex. B.  He owns his home in Texas, where he also owns his own business.  *Id*. & Ex. D.  While Petitioner's rap sheet shows he has been arrested as an adult on six occasions in 2016, 2018, 2019, and 2025, all of these charges appear to have been dismissed.  *See* Respondents' Supplemental Evidence [Dkt. 15], Ex. A.  Petitioner does not have a final order of removal, and he is currently seeking cancellation of removal and adjustment of status through his citizen wife and children.  Petition ¶ 56.

On June 17, 2025, Petitioner was detained by ICE in Texas but has since been transferred to the Adelanto Detention Facility in California where he remains in detention.  *Id*. ¶¶ 2, 6.  Petitioner was not provided with a bond hearing, neither before nor soon after his detention.  It was not until eight months later, on February 26, 2026, that an Immigration Judge denied Petitioner's bond, determining that "DHS has met its burden to establish by clear and convincing evidence that the applicant's release would pose such a significant flight risk that no amount of bond and/or alternatives to detention would be appropriate."  Opposition, Ex. C.[4]

---

[3] Respondents represented at the May 5, 2026 hearing that Petitioner was granted DACA in 2015, but it expired in 2019 when he failed to renew it.  To receive DACA, an individual must meet the threshold criteria related to criminal history, public safety, and national security, but deferred action requests "are determined on a case-by-case basis" and subject to a "[f]inal discretionary determination."  8 C.F.R. § 236.22(b)(6), (c).

[4] Petitioner stated at the May 5, 2026 hearing that he was not present for this bond hearing, and that he was merely presented with a piece of paper telling him that his bond was denied.  This raises

2

## III.   LEGAL STANDARD

The standard for issuing a preliminary injunction is the same as that for issuing a temporary restraining order.  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *see also Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).  To prevail on such a motion, the movant must establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm absent the temporary restraining order, (3) the balance of equities tips in his favor, and (4) a temporary restraining order is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024).  Where the non-movant is a government entity, "the third and fourth factors . . . merge." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc).  In the Ninth Circuit, the *Winter* factors may be evaluated on a sliding scale such that "a stronger showing of one element may offset a weaker showing of another."  *Id*. at 684 (citation omitted).  "When the balance of equities 'tips sharply in the plaintiff's favor,' the plaintiff must raise only 'serious questions' on the merits—a lesser showing than likelihood of success."  *Id*. (citation omitted).

## IV.   DISCUSSION

### A.   Likelihood of Success

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  U.S. Const. amend. V.  It is firmly established that these protections extend to noncitizens present in the United States. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").  In *Mathews v. Eldridge*, the Supreme Court outlined three factors relevant for the due process inquiry: (i) the private interest, (ii) the risk of an erroneous deprivation and the value of additional procedures sought, and (iii) the government's

---

serious due process concerns, and the Court has ordered Respondents to provide a transcript or audio recording of Petitioner's bond hearing.  *See* [Dkt. 13].  But Respondents have thus far been unable to comply with the Court's order because "the recording for the hearing dated on 2/26/2026 has not been properly added to the case record."  Respondents' Supplemental Evidence, Ex. B.

3

interest, including the burdens associated with the additional procedures sought.  424 U.S. 319, 335 (1976).[5]  As explained below, each of the *Mathews* factors strongly favors Petitioner's release and his entitlement to a hearing before he may be re-detained.

### 1. Private Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects."  *Zadvydas*, 533 U.S. at 690.  Generally, the Due Process Clause "requires some kind of a hearing before the State deprives a person of liberty or property."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).  Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.  *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("The fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."); *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017) (holding that re-detention after pre-parole conditional supervision requires a pre-deprivation hearing); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context).  Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates "an implicit promise," upon which that individual may rely, that their liberty "will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]."  *Morrissey*, 408 U.S. at 482.  "[T]he liberty [of a person released from government custody] is valuable and must be seen as within the protection of the [Due Process Clause]."  *Id*.

Here, Petitioner has established a life in the United States for 25 years—nearly his entire lifetime.  He has a U.S. citizen wife and two minor citizen children.  He has no criminal convictions.  Petitioner's parole into the United States, including his receipt of DACA in 2015, "constituted and

---

[5] The Supreme Court, the Ninth Circuit, and its sister circuits have consistently applied the *Mathews* test to non-citizens' due process challenges where the non-citizen has entered and been residing in the United States.  *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022) (collecting cases).

'implied promise' that [his] liberty would not be revoked unless [he] 'failed to live up to the conditions of [his] release.'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) (citing *Morrissey*, 408 U.S. at 482). Respondents do not argue that Petitioner violated any conditions of his release. Under these circumstances, Petitioner has a substantial interest in his freedom from incarceration, and his detention deprived him of this interest. *See id*. at 1032; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (petitioner had a substantial private interest in remaining out of custody where it would enable to him to "work[ ], liv[e] at home, and be[] with family and friends to form the enduring attachments of normal life"); *Morales*, 2026 WL 1026234, at *5 ("Petitioner had a significant liberty interest in remaining out of custody, given the Government's promise through its grant of parole. . . . A liberty interest, such as Petitioner's, is paramount and should be protected."); *Morrissey*, 408 U.S. at 482.

### 2. Risk of Erroneous Deprivation

It is clear that the government will erroneously deprive Petitioner of his protected liberty interest if it does not provide him with a pre-detention hearing. Where, as here, "the government revoked Petitioner's parole without any opportunity for pre-detention review and opportunity to be heard . . . the government's implicit reversal of this determination without any opportunity for pre-detention review makes the opportunity for erroneous deprivation extremely high" because neither the government nor Petitioner has had an opportunity to determine whether there is any valid basis for his detention. *Morales*, 2026 WL 1026234, at *5; *see also Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025). Civil immigration detention is permissible only to prevent flight or protect against danger to the community, *see Zadvydas*, 533 U.S. at 690, but the government has offered *no* evidence that Petitioner's detention would serve either purpose. Indeed, the evidence before the Court suggests the government may have difficulty establishing such a basis. Providing Petitioner with the procedural safeguard of a pre-detention hearing will have significant value in helping ensure that any future detention has a lawful basis. A post-deprivation bond hearing eight months later (or for any significant length of time) poses a substantial and unacceptable risk of erroneously depriving a petitioner of their liberty.

### 3.    Government Interest

More fundamentally, as to the third *Mathews* factor, there is no countervailing government interest that supports conducting a bond hearing only after Petitioner has been detained, rather than in advance thereof.  In the proceedings before this Court, Respondents have articulated no legitimate interest that would support arresting Petitioner without a pre-detention hearing.  Through his minimal criminal history, continued presence in the United States for over 25 years, established career and family life, and prior release on parole, Petitioner has demonstrated that he poses neither a danger to the community nor a flight risk.  *See Jorge M.F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (Petitioner's "strong family ties and "continued employment as a driller" minimized government's concern that he is a danger or flight risk).

Respondents make no argument that Petitioner is a danger or flight risk nor have they articulated any other reason for his detention, let alone a reason for a post-detention, rather than pre-detention bond hearing.  "[W]hether or not the government's existing regulations and practices provide for pre-detention bond hearings, due process requires the government to identify some interest beyond its own administrative practices to justify depriving an individual of [his] liberty without any pre-deprivation protections.  Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest."  *Pinchi*, 792 F. Supp. 3d at 1036.

### B.    Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  "[U]nlawful detention certainly constitutes 'extreme or very serious'" injury which "is not compensable in damages."  *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017).  Moreover, the Ninth Circuit has recognized the "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention."  *Id*. at 995.  Petitioner has articulated that he is the provider and head of household for his family.  *See* Petition ¶ 56.  Accordingly, this factor weighs strongly in favor of granting the Motion.

6

## C.    Balance of Equities and Public Interest

Finally, the balance of equities and public interest "tips sharply" in favor of Petitioner.  "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Fellowship of Christian Athletes*, 82 F.4th at 695 (citation omitted); *see also Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law." (citation omitted)); *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (the government "cannot suffer harm from an injunction that merely ends an unlawful practice").

Of course, the government and the public have a significant interest in the enforcement of immigration laws, but that includes an interest in "upholding procedural protections against unlawful detention." *Pinchi*, 792 F. Supp. 3d at 1037 (citation omitted).  Without these procedures, the government cannot guarantee the accuracy of the outcome. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 144 (W.D.N.Y. 2025) ("[F]air process—not just the correct outcome—matters.  After all, without due process, there is no way to tell whether the result is in fact correct.").

## V.    CONCLUSION

For the foregoing reasons, the Court grants the preliminary injunction as follows:

- Respondents are ordered to **release Petitioner from custody forthwith** and facilitate his transportation to Dallas, Texas.[6]

---

[6] The Court concludes that transfer to Dallas, Texas is "just and proper" relief here, which reflects the status quo prior to Petitioner's arrest.  Other courts, including this one, have ordered this form of relief in similar cases. *See, e.g.*, *Talaso v. Noem*, No. 5:25-cv-01854-HDV-SP, 2026 WL 561998, at 3 & n.1 (C.D. Cal. Feb. 11, 2026); *Hernandez v. Lyons*, No. 2:25-cv-05376-FWS-AGR, 2025 WL 3191822, at *8 (C.D. Cal. June 18, 2025) (ordering Respondents to "transfer Petitioner . . . back to the Central District of California and release him from custody"); *Moreno v. Bondi*, No. 2:26-cv-00273-MIS-DLM (D.N.M. Feb. 5, 2026) [Dkt. 14] at 5 (ordering Respondents and their counsel to "facilitate[e] Petitioner's return to Minnesota"); *A.H.L. v. Noem*, No. 0:26-cv-00860-JRT-EMB, 2026 WL 323106, at *3 (D. Minn. Feb. 6, 2026) ("If Petitioner is presently detained outside of the District of Minnesota, Respondents shall TRANSPORT Petitioner to Minnesota and RELEASE Petitioner from custody immediately."); *J.-A. v. Bondi*, No. 0:26-cv-00868-DWF-SGE, 2026 WL 308897, at *2 (D. Minn. Feb. 5, 2026) ("In the event that Respondents release Petitioner, they must do so . . . in Minnesota[.]").

- Respondents are enjoined and restrained from re-detaining Petitioner without immediately providing him with a pre-deprivation bond hearing.[7]

The parties are ordered to file a joint report regarding the status of compliance with the Court's Order no later than **May 18, 2026**. Respondents are ordered to disseminate this Order to the immigration agents in charge of processing Petitioner, and to place a copy of this Order in the Petitioner's A-File.

Dated: May 14, 2026

Hernán D. Vera
United States District Judge

---

[7] At any such hearing, consistent with Ninth Circuit precedent, the government will bear the burden of showing by clear and convincing evidence whether Petitioner poses a flight risk or danger to the public. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1200 (9th Cir. 2022); *Martinez v. Clark*, 124 F.4th 775, 785–86 (9th Cir. 2024) ("At the outset of its decision, the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that [the detainee] is a danger to the community."); *id.* at 786 (reiterating that "due process requires . . . the government to prove dangerousness or risk of flight by clear and convincing evidence") (citing *Singh v. Holder*, 638 F.3d 1196, 1200, 1205 (9th Cir. 2011), *abrogated on other grounds as recognized by Rodriguez Diaz*, 53 F.4th at 1202); *Al-Sadeai v. U.S. Immigr. & Customs Enf't*, 540 F. Supp. 3d 983, 990–91 (S.D. Cal. 2021) (discussing Ninth Circuit precedent establishing the government's burden and finding the IJ's placement of the burden of proof on detainee violated the Due Process Clause); *Balwan v. Bondi*, 2026 WL 497098, at *9 (W.D. Wash. Feb. 23, 2026) (surveying circuit caselaw and concluding that the government should bear the burden); *Vazquez v. Mattos*, 2026 WL 658896, at *2 (D. Nev. Mar. 9, 2026) (requiring the government to bear the burden) (citing *Singh* and *Martinez*); *Lima v. Wofford*, 2025 WL 3535009, at *4 (E.D. Cal. Dec. 10, 2025) ("The statute is silent on the burden of proof required in a bond hearing under § 1226(a). However, the Ninth Circuit has squarely ruled that due process requires that the Government bear the burden at a § 1226(a) bond hearing of justifying detention by clear and convincing evidence.") (citing *Singh*, 638 F.3d at 1203-06); *Mendoza v. Noem, et al.*, 2026 WL 683180, at *8-*9 (E.D. Cal. Mar. 11, 2026) (analyzing Ninth Circuit cases to find that the holding in *Singh* placing the burden on the government should still be followed).

8